**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:12-cr-00289-JCM-PAL |
| | ) | |
| vs. | ) | **REPORT OF FINDINGS AND** |
| | ) | **RECOMMENDATION** |
| TYRONE DAVIS, | ) | |
| | ) | (Mot. Suppress - Dkt. #31) |
| Defendant. | ) | |
| | ) | |

        This matter is before the court on Defendant Tyrone Davis' ("Davis") Motion to Suppress Evidence (Dkt. #31) which was referred to the undersigned for a Report of Findings and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule IB 1-4.  The court has considered the Motion and the government's Response (Dkt. #32).  No reply has been filed, and the time for filing a response has now run.

**BACKGROUND**

        Davis is charged in an Indictment (Dkt. #1) returned August 7, 2012, with possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); possession of cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D); and possession of a firearm in relation to a drug trafficking offense in violation of 18 U.S.C. §§ 922(g)(1) and 924(c). Davis was arrested July 19, 2012, by Las Vegas Metropolitan Police Department ("LVMPD") robbery detectives for a robbery that occurred on June 27, 2012.  Four women reported that Davis had approached them and engaged them in conversation.  At some point the women became uncomfortable and started to leave.  The women reported that Davis approached one of the women from behind, grabbed her purse and fled.  Detectives learned where Davis might be hiding and arrested him outside of his apartment complex at 6500 Vegas Drive in Las Vegas, Nevada.  At the time of his arrest,

LVMPD detectives obtained a telephonic state search warrant to search his residence for evidence of the robbery.

While executing the search warrant, the officers recovered: (1) a Browning .22 caliber automatic pistol; (2) a bulletproof vest; (3) thirteen rounds of .357 caliber ammunition; (4) forty-three rounds of .25 caliber ammunition; (5) thirty-three rounds of .22 caliber ammunition; (6) a pistol magazine; (7) five baggies of a white powdery substance which field tested positive for 9.6 grams of cocaine; (8) 7.9 grams of marijuana; and (9) digital scales and baggies. In the current motion, Davis seeks to suppress evidence recovered pursuant to the telephonic search warrant, arguing the affidavit supporting the search warrant lacked probable cause. Specifically, Davis argues that the search warrant did not establish probable cause to search for three broad categories of evidence: (1) the fruits of the alleged robbery; (2) paperwork establishing the person's residence at the search premises; and (3) clothing matching the description of the robber on the date of the offense.

Davis maintains that there was no probable cause to believe that the fruits of the robbery would be found in the residence three weeks after the robbery. The items reported stolen included a purse, earrings, and women's "skinny jeans" which the Defendant, a male, would have no use for and would be unlikely to keep. Second, Davis contends that the application failed to establish probable cause to support a search for paperwork such as rent receipts, utility bills, and letters showing the name of the person residing in the premises. Davis claims that establishing who lived in the search premises is irrelevant to the crime of robbery, and that the application did not explain to the issuing judge "how they independently connect the Defendant to the alleged robbery." As to the third group of items, Davis argues that the police did not need clothing the robber was wearing on the date of the robbery to establish their case, but sought permission to search for the clothing "so that they could conduct an exploratory search" of his residence. The victim of the robbery knew Davis, had identified him by name and in a photo lineup, and three other witnesses had also identified him. Therefore, identity was not an issue and recovering clothing "adds nothing to the case."

Davis asserts that the warrant lacked probable cause because there is no colorable argument that property sought to be seized in the dwelling would still be in the residence three weeks after the alleged robbery. This warrant is so lacking in probable cause, and so overbroad, that the officers could not have

1    reasonably relied on it in good faith.  Davis also maintains that Detective Bruno's application for the
2    search warrant contains a material misrepresentation that in his experience "examination of the crime
3    scene and recovering the above described property is necessary in providing evidence of the crime."
4    Davis claims that this is a material misrepresentation and omission because recovering evidence of
5    "domain and control of the residence and identity is only relevant if the fruits of the crime are there and
6    the detective omits this crucial fact."  Davis had already been identified by four witnesses, including the
7    victim, a woman he dated in May 2012, for two weeks.

8        Davis asks for a *Franks* hearing, asserting he has met all five requisite elements articulated by
9    the Ninth Circuit in *United States v. DiCesare*, 765, F.2d 890, 894-95 (9th Cir. 1995).  Detective
10   Bruno's statement to the issuing judge that the items sought were necessary for the prosecution are
11   materially false, he argues.  The statement is necessary for finding of probable cause "because if they
12   [sic] items are not likely to be found, particularly the fruits of the robbery, then the search warrant
13   cannot issue."  The omission that fruits of a robbery are not likely to be found three weeks after the
14   robbery is a material omission.  Nothing in the house was necessary for the officers to charge Davis or
15   continue their investigation.  Rather, Davis claims the officers obtained the search warrant to conduct
16   an exploratory search of his residence.  Finally, Davis argues that suppression is the only appropriate
17   remedy to deter the police from abusing the search warrant application process and violating the Fourth
18   and Fourteenth Amendment rights of law-abiding citizens.

19       The government opposes the motion on several grounds.  First, the government argues that the
20   motion is untimely as it was filed after the February 25, 2012, deadline for filing pretrial motions.
21   Defense counsel was appointed December 21, 2012.  The parties stipulated to continue the trial date,
22   which was granted by the trial judge.  Defense counsel did not request a continuance of the deadline for
23   filing pretrial motions.  Thus, the court should deny the motion as untimely.

24       On the merits, the government argues that Davis has not met his burden of making a substantial
25   preliminary showing that the application for the search warrant contains knowing and intentional false
26   statements or statements made with reckless disregard for the truth.  Davis has also not established that
27   the allegedly false or misleading statement is necessary to a finding of probable cause.  The government
28   points out that two search warrants were issued for Davis' residence.  The first was a telephonic search

3

warrant for evidence of the robbery.  While executing the search warrant for the robbery, the officers discovered evidence used to prosecute Davis in this case and obtained a "piggyback warrant" which authorized the seizure of the firearms, ammunition, drugs and drug paraphernalia.  Defendant's motion suggests he is challenging the probable cause determination for both warrants, as well as the evidence seized as a whole.  However, the motion does not distinguish between the two warrants.

The government argues that the affidavit and application for the telephonic search warrant for the Defendant's apartment demonstrates ample probable cause to search for the items seized.  The warrant was narrow in scope and sought evidence of the robbery and indicia of ownership of the place to be searched.  Davis seems to argue that the information in the warrant was stale because three weeks had elapsed.  However, the Ninth Circuit has held that the mere lapse of substantial amounts of time is not controlling and that staleness should be evaluated in light of the particular facts of the case and the nature of the criminal activity and property sought.  A judge issuing a search warrant is entitled to draw reasonable inferences about where evidence is likely to be kept based on the nature of the evidence and the type of offense under investigation.  A plain reading of the search warrant establishes probable cause to issue a warrant for a search of the Defendant's apartment fifteen days after the reported robbery.  The items to be seized were sufficiently narrow in scope to the items taken during the robbery and items that revealed ownership or indicia of control over the premises.  The judge issuing the search warrant need only conclude that it would be reasonable to seek evidence in the place indicated in the affidavit.  Evidence of dominion and control over the search premises has evidentiary value and may be constitutionally seized under controlling Ninth Circuit and Supreme Court authority.

Even if the court finds the first search warrant was lacking in probable cause, the items that were seized in the first search warrant should not be suppressed because the good-faith exception to the exclusionary rule announced in *United States v. Leon*, 468 U.S. 897 (1984), applies.  The search warrant was obtained in good faith, the officers' conduct in relying on it was objectionably reasonable, and penalizing the officers for the court's mistake does not contribute to deterring further Fourth Amendment violations.

The government argues the second search warrant was also supported by probable cause.  When officers were executing the first search warrant, they found contraband and other items of criminal

1 conduct in "plain view." The observations of the firearms, ammunition, drugs and other evidence were

2 in plain view because officers had the legal right to be at the location from which the objects were

3 viewed. The incriminating nature of the evidence was immediately apparent. The officers knew that

4 Davis was a convicted felon. Therefore, evidence of the firearms, controlled substances and body

5 armor was contraband. Thus, items seized during the second piggyback search warrant should not be

6 suppressed.

7       Finally, the government argues that Davis is not entitled to an evidentiary hearing because his

8 moving papers have not alleged facts with sufficient definiteness, clarity, and specificity to enable this

9 court to conclude that contested issues of fact exist. Rather, the motion is based on legal arguments that

10 challenge the breadth of the search warrant and existence of probable cause.

11 **DISCUSSION**

12       The Fourth Amendment secures "the right of the people to be secure in their persons, houses,

13 papers, and effects against unreasonable searches and seizures." U.S. Const. Amend. IV. The Fourth

14 Amendment protects reasonable and legitimate expectations of privacy. *Katz v. United States*, 389 U.S.

15 347 (1967). The Fourth Amendment protects "people not places." *Id*. Evidence obtained in violation

16 of the Fourth Amendment, and evidence derived from it may be suppressed as the "fruit of the

17 poisonous tree." *Wong Sun v. United States*, 371 U.S. 471 (1963).

18 **I.      Probable Cause.**

19       In *Illinois v. Gates,* the Supreme Court established the standard of review for the issuance of a

20 search warrant. The Court observed that the issuing magistrate must make a "practical, common-sense

21 decision whether, given totality of the circumstances set forth in the affidavit, including the veracity and

22 basis of knowledge of people supplying hearsay information, there is a fair probability that contraband

23 or evidence of a crime will be found in a particular place." 462 U.S. 213, 238-39 (1983). The Court

24 explained that the duty of a reviewing court is to ensure that the magistrate had a "substantial basis" for

25 concluding that probable cause existed. *See Ewing v. City of Stockton,* 588 F.3d 1218, 1223 (9th Cir.

26 2009) (citing *Gates,* 462 U.S. at 238-39). Probable cause requires only a fair probability or substantial

27 chance of criminal activity. *See United States v. Alaimalo,* 313 F.3d 1188, 1193 (9th Cir. 2002).

28 Neither certainty nor a preponderance of the evidence is required. *See United States v. Kelley,* 482 F.3d

5

1047, 1050, 1051 (9th Cir. 2007).  In doubtful cases, the court should give preference to the validity of the warrant.  *Id.* (citing *Gates,* 462 U.S. at 237 n.10).  The court should not "flyspeck" the affidavit supporting a search warrant through de novo review; instead, the magistrate's determination "should be paid great deference.  *Id.* (citing *United States v. Gourde,* 440 F.3d 1065, 1069 (9th Cir. 2006) (en banc)).  Therefore, a judge's determination that an affidavit provided probable cause to issue a search warrant "will be upheld unless clearly erroneous." *United States v. Alvarez,* 358 F.3d 1194, 1203 (9th Cir. 2004).

An affidavit supporting a search warrant establishes probable cause if it contains sufficient facts to justify a conclusion that the property which is the object of the search is probably on the premises to be searched at the time the warrant is issued.  *United States v. Hendricks*, 743 F.2d 653, 654 (9th Cir. 1984) (quoting *Durham v. United States*, 403 F.2d 190, 193 (9th Cir. 1968)), *cert. denied*, 470 U.S. 106 (1985).  The Ninth Circuit has made it clear that courts are to evaluate staleness in light of the particular facts of the case and the nature of the criminal activity and property sought.  *United States v. Pitts*, 6 F.3d 1366, 1369 (9th Cir. 1993) (internal quotation omitted).  Information offered to support a search warrant is not stale if "there is sufficient basis to believe, based on continuing pattern or other good reasons, that the items to be seized are still on the premises." *United States v. Lacy*, 119 F.3d 742, 746 (9th Cir. 1997), *cert. denied*, 118 S.Ct. 1571 (1998) (quoting *United States v. Gann,* 732 F.2d 714, 722 (9th Cir. 1984)).

The Fourth Amendment categorically prohibits the issuance of any warrant except one particularly describing the place to be searched and the persons or things to be seized.  *Maryland v. Garrison*, 480 U.S. 79, 84 (1987).  The purpose of the particularity requirement is to prevent general searches.  *Id.*  By limiting the authorization to search the specific areas and things for which there is probable cause to search, the particularity requirement insures that the search will be carefully tailored to its justifications, and will not become a wide-ranging, exploratory search the Fourth Amendment prohibits.  *Id*

Davis argues that the critical factor that establishes a lack of probable cause in this case is the lapse of time between the robbery and the search warrant.  The robbery occurred on June 27, 2012.  The telephonic search warrant was applied for and obtained on July 19, 2012.  Davis argues that the

question in this case is not whether there was probable cause to believe that he committed a robbery. Rather, the question is whether items described in the search warrant "will be found three weeks later and that those items will be helpful to solving the case." He maintains that the application for the search warrant in this case did not establish a nexus between the items to be seized and the criminal behavior under investigation and therefore failed to establish probable cause.

Reviewing the affidavit as a whole, the court finds the issuing judge had a substantial basis for concluding that probable cause existed to search the apartment for the items described. Probable cause is a common sense decision based on the totality of the circumstances. Detective Bruno's application for the telephonic search warrant swore before the issuing judge that on June 27, 2012, at approximately 10:00 p.m., the victim and three other women were swimming in an apartment complex on Vegas and Torrey Pines when they were approached by Davis. Davis started talking to the girls, they became uncomfortable and began to leave. Davis approached the victim from behind and grabbed her purse. After a short struggle, Davis pushed the victim to the ground and jumped over a block wall with her purse. A short time later, Davis drove up to the women in a silver car and told them he would be back. The victim and witnesses identified the suspect as Tyrone Glenn. Officers conducted a preliminary investigation and learned the suspect's true name was Tyrone Davis.

Detective Bruno's affidavit attests that he created a photo lineup with Davis' photo in it. On July 6, 2012, he met with the victim and witnesses. The victim and all three witnesses viewed the photo lineup independently. All of them identified the photograph of Davis from the lineup.

A law enforcement records check was conducted which showed several addresses for Davis, all of which "check negative for the current residence." On July 19, 2012, Detective Bruno was advised by another officer that he had been able to locate a current address for Davis. The address was confirmed when officers physically observed Davis enter the apartment. Officers arrested Davis when he emerged from the apartment, and applied for a telephonic search warrant to search the apartment for evidence of the robbery and who lived in the apartment.

Detective Bruno averred that based on his training and experience, recovering the evidence requested in the warrant was necessary to provide evidence of the crime, the circumstances related to the robbery, and to circumstantially identify the perpetrator of the crime. Evidence of domain and

1    control of the search premises "often assists in identifying the perpetrator."  The evidence described is

2    "normally left or maintained upon or within the premises."  The warrant sought authorization to search

3    for and seize paperwork such as rent receipts, utility bills, and addressed letters showing who lived in

4    the search premises, property taken from the victim during the crime, and the clothing the victim and

5    witnesses described Davis as wearing on the date of the incident.

6         Davis contends that there was no probable cause that fruits of the robbery would be found in the

7    apartment three weeks after the robbery, especially because Davis would have no use for a purse,

8    earrings, or women's skinny jeans.  Davis also contends the application failed to establish probable

9    cause for a nexus between the paperwork and the alleged criminal activity.  Establishing who lived in

10   the apartment is "irrelevant to the crime of robbery" and Detective Bruno did not explain to the issuing

11   judge "how they independently connect the Defendant to the alleged robbery."  Finally, Davis argues

12   that seeking authorization to search for and seize the clothing Davis wore at the time of the alleged

13   robbery "was evidence that the police did not need or want to establish their case."  Rather, Davis

14   argues Detective Bruno included the request for clothing Davis was wearing to conduct an exploratory

15   search of his residence.

16        In this case, Detective Bruno's affidavit related that the victim and three witnesses had

17   identified Davis as the person who robbed the victim of her personal belongings.  The clothing Davis

18   was wearing at the time of the robbery was specifically described.  The women knew Davis by another

19   name.  Records checks were conducted and Davis' true identity was ascertained.  Police investigated

20   where Davis lived and learned of numerous addresses, none of which proved to be his current address

21   on investigation.  On July 19, 2012, police located Davis in the apartment for which the search warrant

22   was requested and obtained, and arrested him as he left the premises.  Probable cause does not deal with

23   hard certainties, but with probabilities.  *Illinois v. Gates*, 462 U.S. at 241.  It is a "fluid concept"

24   assessed under the totality of the circumstances.  *Id*., at 232.  It assesses probabilities in a particular

25   factual context "not readily, or even usefully, reduced to a neat set of legal rules."  *Id*.  This court is

26   required to give great deference to the issuing judge's determination that probable cause existed, and in

27   doubtful cases, to give preference to the validity of the warrant.  The warrant described the items to be

28   searched for and seized–the personal belongings the victim reported were taken from her, and the

clothing the victim and witnesses reported Davis was wearing at the time of the robbery.  The mere lapse of time between the June 27, 2012, robbery and July 19, 2012, search did not destroy probable cause.

It is well established that a judge issuing a search warrant may rely on the conclusion of experienced law enforcement officers regarding where evidence of a crime is likely to be found. *United States v. Ayers*, 924 F.2d 1468, 1479 (9th Cir. 1991) ("In weighing the evidence supporting a request for a search warrant, a magistrate may rely on the conclusions of experienced law enforcement officers regarding where evidence of a crime is likely to be found.") A judge is also entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense. *United States v. Angulo-Lopez*, 791 F.2d 1394, 1399 (9th Cir. 1986). *See* also *United States v. Henson*, 123 F.3d 1226, 1238-39 (9th Cir. 1997).  The court finds that applying common sense and considering the totality of the circumstances presented to the issuing judge, there was a fair probability that contraband or evidence of the robbery would be found in the apartment.  It may not be wise for a robber to keep a victim's personal belongings and the clothing worn during the commission of the robbery in his apartment.  However, the nature of this offense involved allegations that Davis robbed a woman known to him in the presence of three witnesses, hardly the act of a wise robber.

Finally, Davis argues that the warrant lacks probable cause to support a search for paperwork showing who lived in the apartment because establishing who lived there is irrelevant to the crime of robbery.  However, the Ninth Circuit has repeatedly upheld warrants authorizing the seizure of items which establish the identity of persons in control of premises.  "It is axiomatic that if a warrant sufficiently describes the premises to be searched, this will justify a search of the personal effects therein belonging to the person occupying the premises if those effects might contain the items described in the warrant." *United States v. Gomez-Soto*, 723 F.2d 649, 654 (9th Cir. 1994).  The Ninth Circuit has long upheld warrants "authorizing the seizure of items which establish the identity of persons in control of the premises." *United States v. Whitten*, 706 F.2d 1000 (9th Cir. 1983) (citing *United States v. Marques*, 600 F.2d 742, 751 at n. 5 (9th Cir. 1979), *cert. denied*, 444 U.S. 1019 (1980)).

/ / /

1

2   **II.    Good Faith Exception.**

3        The government argues that even if the court finds the telephonic search warrant lacks probable

4   cause, the good-faith exception applies and suppression is not a reasonable remedy.  In *United States v.*

5   *Leon*, 468 U.S. 897, 925 (1984), the United States Supreme Court established an exception to the

6   exclusionary rule for a search conducted in good faith reliance upon an objectively reasonable search

7   warrant.  The Supreme Court held that the exclusionary rule should not bar evidence obtained by

8   officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate,

9   but ultimately found to be unsupported by probable cause.  Adopting a good faith reliance test, the

10  Supreme Court reasoned that the rationale for the Fourth Amendment exclusionary rule was to deter

11  unlawful *police* conduct.  If, after reviewing an affidavit and application for a search warrant, an issuing

12  judge incorrectly concludes the affidavit states probable cause, the mistake is made by the judge not the

13  police officer.  The court's prior precedents had held that the exclusionary rule's "primary purpose is to

14  deter future unlawful police conduct, and therefore effectuate the guarantee of the Fourth Amendment

15  against unreasonable searches and seizures."  *United States v. Calandra*, 414 U.S. 338, 347 (1974).  In

16  *Leon*, the Supreme Court recognized that, if an officer is acting as a reasonable officer would and

17  should act in similar circumstances, that excluding evidence "can in no way affect his conduct unless it

18  is to make him less willing to do his duty."  468 U.S. at 920.

19        The Supreme Court has emphasized that lower courts should apply the exclusionary rule

20  pragmatically, balancing the costs of excluding evidence with the benefits of deterring overreaching by

21  law enforcement officers.  *See Illinois v. Krull*, 480 U.S. 340, 347 (1987).  The Supreme Court has also

22  held that courts have the discretion to determine whether the good faith reliance exception applies

23  before determining whether a search warrant application and affidavit are supported by probable cause.

24  *See Leon*, 468 U.S. at 923-25.  The Ninth Circuit has recognized that "[f]or the good faith reliance

25  exception to apply, the officers must have relied on the search warrant in an objectively reasonable

26  manner."  *Crews*, 502 F.3d at 1136 (citing *Untied States v. Clark,* 31 F.3d 831, 835 (9th Cir. 1984)).

27  The affidavit supporting the search warrant must at least establish a colorable argument for probable

28  cause for the good faith exception to apply.  *Id.* (citing *United States v. Luong,* 470 F.3d 898, 903 (9th

    Cir. 2006)).  Therefore, the evidence seized in the search of the Defendant's apartment is admissible if

1  there is a colorable argument that the search warrant was supported by probable cause because, if so,

2  Detective Bruno's reliance on the search warrant was objectively reasonable.  A determination that the

3  search warrant was objectively reasonable "ends the inquiry without having to belabor the issue of

4  whether the affidavit stated probable cause." *Id.*

5       *Leon* recognized four exceptions in which the good faith exception does not apply because

6  reliance is, per se, unreasonable.  They include: (1) where the issuing magistrate was misled by

7  information in the affidavit which was knowingly or recklessly false; (2) where the issuing magistrate

8  had abandoned the detached and neutral judicial role; (3) where the affidavit was so lacking in probable

9  cause as to render official belief in its existence entirely unreasonable; or (4) where the warrant is so

10 facially deficient in failing to particularize the place to be searched or things to be seized that the

11 executing officers could not reasonably presume it to be valid.  In this case, Davis argues that the

12 issuing judge was mislead by information in the affidavit which was knowingly or recklessly false.  For

13 the reasons explained in the next section, the court finds that the affidavit did not contain an

14 intentionally or recklessly false statement or omission.  Davis does not claim that the issuing judge

15 abandoned her detached and neutral judicial role.  Rather, he claims that the affidavit was so lacking in

16 probable cause as to render official belief in its existence unreasonable and that it was facially deficient

17 in failing to particularize the things to be seized.  For the reasons stated, the court has found that

18 Detective Bruno's affidavit established probable cause to search for the items authorized.  The court has

19 also found that the warrant was reasonably particular in specifying the items to be searched for and

20 seized.  However, even if the affidavit lacked probable cause, the good-faith exception applies, and

21 suppression is not warranted on the facts of this case,

22 **III.   *Franks* Hearing.**

23      In this case Davis argues that Detective Bruno made a material misrepresentation to the judge

24 issuing the telephonic search warrant when he stated: "It is my experience that examination of the crime

25 scene and recovering the above described property is necessary in providing evidence of the crime."

26 Motion 15:18-20.  Davis claims this was a material misrepresentation because the statement mislead the

27 court by referring to Detective Bruno's "experience generally and omitting his experience under the

28 circumstances."  Davis reasons that recovering evidence "of domain and control of the residence and

1  identity is only relevant if the fruits of the crime are there and the detective omits this crucial fact."

2  Because the victim and other witnesses had already identified the Defendant, Davis argues that nothing

3  tending to establish the identity of the robber was "necessary."  He asks for an evidentiary hearing

4  arguing he has met his initial threshold burden of showing that the application for the search warrant

5  contains knowing and intentional false statements, or statements made with reckless disregard for the

6  truth, and that the false or misleading statement was necessary to a finding of probable cause.

7      A defendant is entitled to a hearing pursuant to the United States Supreme Court's opinion in

8  *Franks v. Delaware* where he makes a substantial preliminary showing that: (a) the affidavit in support

9  of a search warrant contains intentionally or recklessly false statements or misleading omissions; and

10  (b) the affidavit in support of a search warrant cannot support a finding of probable cause without the

11  allegedly false information.  *See Franks v. Delaware,* 438 U.S. 154, 170 (1978)); *United States v.*

12  *Reeves,* 210 F.3d 1041, 1044 (9th Cir. 2000).  To justify a hearing, a defendant must make "specific

13  allegations, allege a deliberate falsehood or reckless disregard for the truth, and accompany such claim

14  with a detailed offer of proof." *United States v. Craighead,* 539 F.3d 1073, 1080 (9th Cir. 2008)

15  (citation omitted).  Intentional or reckless omissions may also provide grounds for a *Franks* hearing.

16  *United States v. Jawara,* 474 F.3d 565, 582 (9th Cir. 2007).  If a defendant makes the requisite

17  preliminary showing, a hearing is conducted to determine the validity of the warrant.  Suppression

18  results if, after excising the false or misleading statements from the affidavit, there is not probable cause

19  to support the warrant.  *See Franks,* 438 U.S. at 171-72.

20      The court finds Davis has not made the requisite preliminary showing and is not entitled to a

21  hearing to determine the validity of the warrant.  Davis has not shown that Detective Bruno's statement

22  in the affidavit that in his experience evidence of the robbery would be found in the Defendant's

23  apartment was false or misleading.  The arguments made that Davis, a male, would not have any use for

24  a woman's purse, earrings, or skinny jeans, is not very persuasive where, as here, Davis is alleged to

25  have robbed a victim he knew and taken these very items.  It is well established that warrants

26  authorizing the seizure of items which establish the identity of persons in control of the premises are

27  valid.  Finally, Davis' arguments that because the victim and other witnesses had already identified him,

28  / / /

12

1   that police did not need to establish the identity of the robber is frivolous.  The entire purpose of a

2   search warrant is to obtain evidence of the crime under investigation.

3   **IV.   <u>Plain View</u>**.

4          The motion to suppress challenges the telephonic search warrant, and does not specifically

5   address the second search warrant issued which recovered the evidence the government relies on to

6   prosecute this case.  However, the motion seeks to suppress the drugs, drug paraphernalia, and weapons

7   recovered pursuant to the second search warrant.  Presumably, Davis bases his arguments on the fruit of

8   the poisonous tree doctrine.  The government argues that the second search warrant was obtained based

9   on observations the officers made in plain view while executing the initial valid warrant for evidence of

10  the robbery.

11         For the plain view doctrine to apply, the officers must be in a lawful position to view the items,

12  and the items must reasonably appear to be contraband or evidence of a crime.  *See, e.g., Texas v.*

13  *Brown*, 460 U.S. 730, 737 (1983).  Plain view seizures are valid if the police have probable cause to

14  believe an item is evidence after an inspection of "what is already exposed to view."  *Arizona v. Hicks*,

15  480 U.S. 321, 322 (1987).  Similarly, in *Minnesota v. Dickerson*, the Supreme Court reiterated that for

16  the plain view doctrine to justify a seizure, the incriminating nature of an object must be apparent.  The

17  court explained that the incriminating nature of the object is immediately apparent if police have

18  probable cause to believe an object in plain view is contraband.  508 U.S. 366, 375 (1993).   Or as the

19  Ninth Circuit stated in *United States v. Garcia*, the plain view exception requires a finding: (1) that the

20  initial intrusion was lawful; and (2) that the incriminating nature of the evidence was immediately

21  apparent to the officer.  205 F.3d 1182, 1187 (9th Cir.), *cert. denied*, 531 U.S. 856 (2000).

22         In this case, the police were lawfully on the premises executing the telephonic search warrant

23  when they discovered drugs, drug paraphernalia, and firearms and ammunition.  At the time the search

24  was conducted, the police were aware that Davis was a convicted felon.  The drugs and drug

25  paraphernalia are contraband.  The incriminating nature of firearms and ammunition on the premises of

26  a convicted felon was immediately apparent to the officers executing the warrant.  However, rather than

27  rely on the plain view exception to the warrant requirement, the police obtained a second search warrant

28  authorizing the seizure of these items which were exposed to view while the officers were lawfully on

the premises executing the first warrant.  Davis' Fourth Amendment rights were not violated by the

officers' plain view observation of contraband and evidence of another offense.

**CONCLUSION**

For the reasons stated, the court finds that Davis' Fourth Amendment rights were not violated by

either of the search warrants executed in this case, and that there is no basis to suppress the evidence

seized.

For all of the reasons stated,

**IT IS RECOMMENDED** that Davis' Motion to Suppress Evidence (Dkt. #31) be **DENIED**.

Dated this 23rd day of April, 2013.


Peggy A. Leen
United States Magistrate Judge

14