UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff(s),<br><br>  v.<br><br>TYRONE DAVIS,<br><br>  Defendant(s). | Case No. 2:12-CR-289 JCM (PAL)<br><br>ORDER |

Presently before the court are Magistrate Judge Leen's reports and recommendations regarding defendant's motion to suppress evidence (doc. #187) and motion to suppress statements made by the defendant. (Doc. #188). Defendant Tyrone Davis filed objections (docs. #199, 200), and the government filed responses to defendant's objections. (Docs. # 204, 205).

**I.     Background**

On August 7, 2012, a federal grand jury issued an indictment charging defendant with possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); possession of cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D); and possession of a firearm in relation to a drug trafficking offense in violation of 18 U.S.C. §§ 922(g)(1) and 924(c). (Doc. #1).

The Las Vegas Metropolitan Police Department ("LVMPD") arrested defendant on July 19, 2012, for a robbery that occurred on June 27, 2012. Four women reported that defendant had approached them and engaged them in conversation. The women reported that defendant approached one of the women from behind, grabbed her purse, and fled. Detectives learned where defendant might be living and arrested him outside of his apartment complex at 6500 Vegas Drive

in Las Vegas, Nevada. At the time of his arrest, LVMPD detectives obtained a telephonic search warrant to search his residence for evidence of the robbery.

While executing the first search warrant, the officers found: (1) a Browning .22 caliber automatic pistol; (2) a bulletproof vest; (3) thirteen rounds of .357 caliber ammunition; (4) forty-three rounds of .25 caliber ammunition; (5) thirty-three rounds of .22 caliber ammunition; (6) a pistol magazine; (7) five baggies of a white powdery substance which field tested positive for 9.6 grams of cocaine; (8) 7.9 grams of marijuana; and (9) digital scales and baggies. Another detective applied for a second state telephonic search warrant later that same evening to search a blue 1995 Oldsmobile located at the apartment complex. The second search warrant requested and received judicial authorization to search for and seize a Browning .22 caliber handgun, any other firearms, firearm paraphernalia, magazines, ammunition, cleaning kits and holsters, narcotics and narcotics paraphernalia, and a bulletproof vest. (Doc. #187).

Defendant filed a motion to suppress evidence (doc. #144) and a motion to suppress statements made by the defendant. (Doc. #147). Magistrate Judge Leen issued two reports and recommendations recommending that both of defendant's motions to suppress be denied. Defendant filed objections to both reports and recommendations. (Docs. # 199, 200). The court now reviews Magistrate Judge Leen's recommendations.

**II.    Legal Standard**

This court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). Where a party timely objects to a magistrate judge's report and recommendation, the court is required to "make a de novo determination of those portions of the [report and recommendation] to which objection is made." 28 U.S.C. § 636(b)(1). Where a party fails to object, however, the court is not required to conduct "any review at all . . . of any issue that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985).

. . .

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

- 2 -

### III. Discussion

#### a. Motion to suppress evidence

In the report and recommendation, Magistrate Judge Leen found that 1) the first search warrant was validly obtained; 2) the initial intrusion into defendant's apartment was lawful pursuant to the first search warrant, and the incriminatory nature of the evidence was immediately apparent; and 3) Detective Sazer's testimony that he did not enter the apartment to photograph the premises until after the search warrant was obtained was credible. (Doc. #187). The government concurs and asks the court to adopt the report and recommendation in full. (Doc. #204).

Defendant claims that the magistrate judge erred in determining that a *Franks* hearing was not warranted; that the first search warrant did not lack probable cause; and that Detective Sazer's testimony was more trustworthy than the metadata embedded in the photographs of defendant's residence taken on July 12, 2012.

#### i.   Probable cause and Franks *hearing*

First, defendant argues there were materially false and misleading errors and omissions made in the first search warrant application, which mandate a *Franks* hearing and suppression.

A defendant is entitled to a hearing pursuant to the United States Supreme Court's opinion in *Franks v. Delaware* when he makes a substantial preliminary showing that: (a) the affidavit in support of a search warrant contains intentionally or recklessly false statements or misleading omissions; and (b) the affidavit in support of a search warrant cannot support a finding of probable cause without the allegedly false information. *See Franks*, 438 U.S. 154, 170 (1978)); United States v. Reeves, 210 F.3d 1041, 1044 (9th Cir. 2000). To justify a hearing, a defendant must make "specific allegations, allege a deliberate falsehood or reckless disregard for the truth, and accompany such claim with a detailed offer of proof." *United States v. Craighead*, 539 F.3d 1073, 1080 (9th Cir. 2008) (citation omitted). Intentional or reckless omissions may also provide grounds for a *Franks* hearing. *See United States v. Jawara*, 474 F.3d 565, 582 (9th Cir. 2007).

However, "omissions or misstatements resulting from negligence or good faith mistakes will not invalidate an affidavit which on its face establishes probable cause." *Ewing v. City of Stockton*, 588 F.3d 1218, 1224 (9th Cir. 2009) (citation omitted).  The court conducts a hearing to

James C. Mahan
U.S. District Judge

- 3 -

1   determine the validity of the warrant only if a defendant makes the requisite preliminary showing.
2   Suppression results if, after excising the false or misleading statements from the affidavit, there is
3   not probable cause to support the warrant. *See Franks*, 438 U.S. at 171-72.

4   Defendant claims that the search warrant was not validly issued because 1) Detective Bruno
5   purposely or recklessly misrepresented that the police had established a direct physical connection
6   between defendant and the address; 2) Detective Bruno misled the judge issuing the warrant by
7   stating that he learned about defendant's address on July 19, 2012, rather than from Detective
8   Owens on July 14, 2012; 3) Detective Owens's statements regarding how he located defendant's
9   address were not credible; and 4) Detective Owens's conversations and lack of documentation
10  surrounding information obtained from a concerned citizen about the defendant were not credible.
11  (Doc. #199).

12  Magistrate Judge Leen found that the first search warrant application authored by Detective
13  Bruno was wrong in stating that defendant was arrested coming out of his apartment. Detective
14  Bruno himself testified that defendant was arrested in the parking lot.  (Doc. #187). Furthermore,
15  Magistrate Judge Leen noted that while Detective Bruno's search warrant application did not
16  inform Judge Tobiasson about the "concerned citizen" who provided additional information
17  connecting defendant to the searched premises, doing so would have only bolstered, not negated,
18  probable cause to believe defendant lived in the apartment. Consequently, Magistrate Judge Leen
19  ultimately found that Detective Bruno's and Owens's testimony was credible and the mistakes in
20  the application for the search warrant did not invalidate the warrant itself. (Doc. #187).

21  The court agrees. Defendant failed to make a substantial showing that Detective Bruno's
22  mistake as to where the officers first saw and arrested defendant was "deliberate or reckless." *See*
23  *Jawara*, 474 F.3d at 582. The evidence does not suggest that Detective Bruno purposely or
24  recklessly misrepresented that officers had physically observed defendant enter the apartment.
25  Detective Bruno was not present at the time officers arrested defendant on July 19th, and he made
26  clear that he was relying on other officers' information at the time he requested the search warrant.
27  (Doc. #144, Exh. A).

28

**James C. Mahan**
**U.S. District Judge**

- 4 -

Furthermore, the court agrees with the magistrate judge's finding that Detective Owens's testimony was credible. Detective Owens testified that he found an address for defendant on July 14, 2012, using one of the police computer database systems. While defendant argues that the testimony should be disregarded because Detective Owens could not remember which database was used, the court finds that lapse in memory immaterial, and it certainly does not demonstrate a substantial showing by the defendant. (Doc. #199).

Detective Owens also testified that officers conducted surveillance at the apartment complex on Vegas Drive between July 14, and July 18, 2012, which defendant does not dispute. (Doc. #187). Defendant contends, however, that he was out of town during the time Detective Owens conducted the surveillance, and therefore he could not have been seen coming out of his apartment. (Doc. #199). However, Magistrate Judge Leen found, and the court agrees, a number of investigating officers and a variety of different tactics were involved in attempting to verify defendant's address. Detective Owens testified that he was out at the apartment complex several times. On one occasion while at the apartment complex, Detective Owens had contact with a black male adult driving one of the vehicles police knew from a police records check was associated with defendant. (Docs. #187, 189). The individual claimed to be defendant's mechanic and told Detective Owens that defendant was out of town and verified defendant's address by pointing to it. (Doc. #189). Detective Owens also testified that surveillance officers observed defendant entering his apartment. The surveilling officers did a knock-and-talk, but defendant did not answer the door. (Docs. #187, 189). Thus, Detective Owens had a legitimate basis upon which to inform Detective Bruno that defendant lived at the apartment.

As a result, the government correctly noted, and the testimony before Magistrate Judge Leen demonstrated, that Detective Bruno had a good-faith belief that defendant lived at the address based on information he received from other officers, which he indicated to Judge Tobiasson when he requested the warrant. (Docs. #154, 187). *See United States v. Bridges*, 344 F.3d 1010, 1015 (9th Cir. 2003); *see also United States v. Ventresca*, 380 U.S. 102, 108 (1965) ("An affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, so long as the magistrate is informed of some of the underlying circumstances supporting the

**James C. Mahan**
**U.S. District Judge**

affiant's conclusions."). Indeed, Detective Bruno related much of the information upon which Detective Owens had based his determination. (Doc. #189).

Consequently, the defendant has not met his burden in showing that this was a deliberately false statement or an intentional or reckless omission that would provide grounds for a *Franks* hearing. *See Jawara*, 474 F.3d at 582.

### ii. Photographs of the residence

Defendant's argument that the magistrate judge erred in finding Detective Sazer's testimony credible is a recitation of his claims in his original motion to suppress. He believes that the court should give the metadata on the camera more weight than Detective Sazer's testimony that the camera had not been adjusted for daylight savings time. (Doc. #199). Having reviewed the arguments and testimony, the court agrees with Magistrate Judge Leen and finds credible Detective Sazer's testimony that he did not enter the apartment to photograph the premises until after the search warrant was obtained.

Having found that the first warrant was valid and that Detective Sazer did not enter the property prior to that warrant, the court need not address defendant's objections to the second warrant. Everything seized was in plain view from areas the officers had a lawful right to search based on the first warrant, rendering the second warrant unnecessary regardless of its validity. (Doc. #187).

Therefore, after reviewing Magistrate Judge Leen's report, defendant's objections, the government's response, and the underlying briefs and transcript *de novo*, the court adopts the report and recommendation in full and denies defendant's motion to suppress.

### b. Motion to suppress statements

In her report and recommendation, Magistrate Judge Leen found that 1) although defendant was in custody, he was not subjected to custodial interrogation by the brief conversation he had with Detective Bruno and therefore *Miranda* warnings were not required; 2) under the totality of the circumstances surrounding defendant's interview on July 20, 2012, defendant knowingly and intelligently waived his rights against self-incrimination; 3) the statements were voluntary; and 4)

**James C. Mahan**
**U.S. District Judge**

defendant's conversation with detective Bruno did not taint his July 20, 2012, statements. (Doc. #188).

Defendant claims that the magistrate judge erred in her findings that defendant was not subjected to custodial interrogation during his conversation with Detective Bruno; that Detective Bruno was credible when he testified that he entered the room and engaged defendant in conversation as a courtesy; that defendant's July 20, 2012, interview was knowing and voluntary; that Detective Martinez's testimony regarding the defendant's demeanor was credible; that defendant's statements were voluntarily given; and that the detectives taking statements from defendant did not engage in a deliberate two-step interrogation. (Doc. #200).

The court agrees with Magistrate Judge Leen's thorough analysis of the issues put forth in defendant's motions to suppress. Although defendant was in custody, he was not subjected to custodial interrogation by this brief conversation with Detective Bruno. Detective Bruno's statements that he entered the room merely as a courtesy to inform defendant of the reason for the delay in transporting him to jail and that defendant voluntarily initiated a conversation about being interviewed are credible. (Docs. #188, 189). Because Detective Bruno's interaction with the defendant in the doorway to the interview room did not constitute an interrogation, *Miranda* warnings were not required for that conversation.

Magistrate Judge Leen further found, and the court agrees, that under the totality of the circumstances surrounding defendant's interview on July 20, 2012, defendant knowingly and voluntarily waived his rights against self-incrimination. *See United States v. Garabay*, 143 F.3d 434, 536 (9th Cir. 1998) ("A valid waiver of Miranda rights depends on the totality of circumstances including the background, experience and conduct of the defendant.").

Detective Martinez testified that defendant indicated he understood and waived his rights. (Docs. #188, 189). Defendant knew he was likely to be prosecuted federally because of the items in his apartment. The court agrees with Magistrate Judge Leen that the most reasonable inference from Detective Bruno's testimony is that defendant wanted to provide information to the detectives assigned to the possible federal prosecution hoping for some reciprocal consideration. (Doc. #188). The court finds that defendant's statements on July 19, 2012, and July 20, 2012, were voluntary.

James C. Mahan
U.S. District Judge

- 7 -

Nothing in the record supports a finding that statements on either day were obtained in a manner incompatible with the requirements of the Constitution. (*Id.*).

Finally, the court agrees that the elements of a two-step interrogation did not occur in this case. The Supreme Court has held that when police deliberately fail to advise a suspect of *Miranda* rights, extract an incriminating statement, then advise the suspect of his *Miranda* rights and extract the same statements from the suspect, the statements are inadmissible even in the absence of coercion. *Missouri v. Siebert*, 542 U.S. 600, 611-12 (2004). The court finds the officers involved in taking statements from defendant did not engage in a deliberate two-step interrogation.

As discussed above, defendant was not subject to a custodial interrogation, but rather made spontaneous statements to Detective Bruno on July 19, 2012. He was not questioned about the items found in his apartment that resulted in this federal prosecution. Detective Bruno was assigned only to the robbery charge, and explicitly informed defendant he would not interview him. (Doc. #188). Magistrate Judge Leen correctly concluded that Detective Bruno's conversation with the defendant in the doorway of the interview was not the first step of a two-step interrogation. Furthermore, defendant's July 20, 2012 statements were given only after he received and waived *Miranda* warnings.

Therefore, after reviewing Magistrate Judge Leen's reports, defendant's objections, the government's responses, and the underlying briefs and transcript *de novo*, the court adopts the report and recommendation in full.

**IV.   Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Magistrate Judge Leen's reports and recommendations (docs. ## 187, 188) be, and the same hereby are, ADOPTED in full.

IT IS FURTHER ORDERED that defendant Tyrone Davis's motion to suppress evidence (doc. # 144) and motion to suppress statements (doc. #147) are DENIED.

DATED March 14, 2016.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**

- 8 -